COURT OF APPEALS OF VIRGINIA

Present:  Judges Coleman, Willis and Bumgardner
Argued at Richmond, Virginia


ROJAI LAVAR FENTRESS

                                    MEMORANDUM OPINION[*] BY
v.          Record No. 2056-97-2    JUDGE SAM W. COLEMAN III
                                        SEPTEMBER 15, 1998
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    James B. Wilkinson, Judge

            Maureen L. White (Theodore N.I. Tondrowski,
            on brief), for appellant.

            Michael T. Judge, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


    Rojai Fentress appeals his jury trial convictions for first

degree murder, Code § 18.2-32, and use of a firearm in the

commission of murder, Code § 18.2-53.1.  He contends:  (1) the

trial court erred in refusing to grant his motion for a mistrial,

and (2) the evidence is insufficient to identify him as the

killer.  We hold that the record does not demonstrate a manifest

probability that the court's denial of a mistrial was

prejudicial, and the evidence is sufficient to prove that

appellant committed the murder.  Accordingly, we affirm the

convictions.

                            BACKGROUND

    The evidence established that the victim, Thomas Foley, and

_____

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

his companion, Julie Howard, drove to the Midlothian Village Apartments to purchase cocaine. Howard parked the car near a streetlight in a well-lit area in front of the breezeway to one of the apartment buildings. The victim rolled down the passenger side window and peered out at a group of six to eight young men standing approximately fifty yards away from the vehicle. One of the men, whom Howard identified in court as the appellant, approached the victim and asked what he wanted. When the victim told appellant that he only "dealt with" another individual, appellant said the victim would have to "deal with me" and walked away from the car and rejoined the group.

A couple of minutes later, appellant returned to the car and showed the victim two "zip bags" of crack cocaine. The victim removed $57 from his pocket, examined the bags of cocaine, told appellant that the bags did not appear to contain enough cocaine, and asked if appellant "could do better than that." Appellant walked away momentarily and then returned to the car for a third time. Howard testified that appellant looked "very nervous" and that he held his hand in his pants pocket with his shirt "hanging over his hand." Appellant told the victim, "If you want to deal with me, you have to get out of the car." The victim exited the car and followed the appellant into an apartment building breezeway. Howard saw no other persons enter the breezeway, but she testified that it was too dark for her to see inside the breezeway. "[W]ithin five, ten seconds, tops" after seeing

appellant and the victim enter the breezeway, Howard heard a single gunshot.  The victim ran from the breezeway, reentered the car, and said, "I have been shot in the heart, and I'm going to die.  [T]he son of a bitch shot me."  The victim later died.

REFUSAL TO GRANT A MISTRIAL

At trial, City of Richmond Police Detective Darryl Street testified that he performed off-duty security work for the Midlothian Village Apartments.  Testifying for the Commonwealth, he stated that appellant and appellant's mother had previously been residents of the apartment complex.  When the Commonwealth's attorney asked Detective Street "how often would you see [appellant] around 4024 Midlothian Village Apartments" after he had moved out, the detective replied:  "He frequented that area. . . .  [T]here were several subjects . . . that frequented the area that I believed . . . were involved in some kind of criminal activity."

Appellant immediately made a motion for a mistrial.  The trial court denied the motion and admonished the jury:  "I am going to instruct you to totally disregard that [last answer], take no account whatsoever. . . .  Totally disregard that last statement."  Before giving the case to the jury, the trial court further instructed the jury:  "You may not consider any matter that was rejected or stricken by the court.  It is not evidence and should be disregarded."

On appeal, the trial court's denial of a mistrial motion

- 3 -

will not be reversed unless a manifest probability exists that such denial was prejudicial. See Bottoms v. Commonwealth, 22 Va. App. 378, 385, 470 S.E.2d 153, 157 (1996). In the present case, we find no manifest probability that the jury could not or did not follow the instruction to disregard the inadmissible evidence or that the denial of a mistrial was prejudicial to appellant. Cf. Mills v. Commonwealth, 24 Va. App. 415, 482 S.E.2d 860 (1997). That portion of the officer's statement that appellant was seen associating with a group of people that the officer suspected of criminal activity was irrelevant and prejudicial in that it tended to characterize appellant as a person who associated with persons suspected of unspecified criminal activity. Although improper, the nature of the evidence is not so prejudicial that a manifest probability exists that the jury could not disregard the evidence. The statement did not state the nature of the criminal activity of which the group was "suspected" and did not indicate that appellant was "suspected" of being engaged in criminal activity. At most, the detective's evidence suggests that the appellant had been known to associate with persons "suspected" of some unspecified criminal activity. The record discloses that the trial court promptly and effectively instructed the jury to disregard Detective Street's inadmissible statement. The court reiterated a similar admonition when instructing the jury. In the absence of record evidence to the contrary, "we presume that the jury followed the

trial court's instruction to disregard the testimony in question." Howard v. Commonwealth, 6 Va. App. 132, 144, 367 S.E.2d 527, 534 (1988). Accordingly, the trial court did not err in denying a mistrial.

SUFFICIENCY OF THE EVIDENCE

Appellant next contends the evidence is insufficient to identify him as the perpetrator of the murder. We disagree.

When the sufficiency of the evidence is challenged on appeal, we must determine whether the evidence, viewed in the light most favorable to the Commonwealth, and the reasonable inferences fairly deducible from the evidence support each and every element of the charged offense. See Moore v. Commonwealth, 254 Va. 184, 186, 491 S.E.2d 739, 740 (1997); Derr v. Commonwealth, 242 Va. 413, 424, 410 S.E.2d 662, 668 (1991). When the Commonwealth relies upon circumstantial evidence to prove guilt, the circumstances proved must be consistent with guilt and must exclude all reasonable hypotheses of innocence. See Garland v. Commonwealth, 225 Va. 182, 184, 300 S.E.2d 783, 784 (1983). Under familiar principles, we will not disturb the jury's verdict unless it is plainly wrong or unsupported by the evidence. See Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988).

Here, circumstantial evidence is sufficient to prove that appellant was the person who committed the murder. Howard identified appellant as the person she had seen approach the car

on three occasions attempting to sell cocaine to the victim.  In close proximity to Howard, appellant and the victim discussed the quantity of cocaine the victim was trying to buy.  Howard observed that on the last occasion that appellant approached the car, appellant looked nervous and appeared to be concealing something in his pants pocket.  Appellant had the victim exit the car and led him to the apartment breezeway.  Within seconds after appellant and the victim entered the breezeway, Howard heard a gunshot and saw the victim run toward the car holding his chest.  When he arrived at the car, he stated "the son of a bitch shot me."

Appellant contends the evidence failed to exclude the reasonable hypothesis, based on the testimony of an alibi witness, that appellant was having dinner with his mother when the killing occurred.  Appellant further contends the jury could not have reasonably believed Howard's in-court identification of him because Howard first saw the appellant at the preliminary hearing when police brought him into the courtroom in handcuffs.[1]  We find no merit in appellant's arguments.

The credibility of witnesses and the weight accorded to

---

[1]The evidence established that Police Detective James Hickman showed Howard two "photo spreads" and asked her if the killer's photograph was among the spreads.  Hickman testified that neither of the photo spreads displayed a picture of the appellant.  Howard "took her time" and "looked at each [photograph] individually."  Eventually, Howard indicated to Hickman that the killer was not displayed in any of the photographs.

their testimony are matters within the exclusive province of the jury. See Lea v. Commonwealth, 16 Va. App. 300, 304, 429 S.E.2d 477, 479 (1993). From these facts, the fact finder could reasonably infer that Howard was able to identify the appellant as the person who was attempting to sell drugs to the victim and that the victim was referring to appellant when he stated "the son of a bitch shot me." On these facts, the jury reasonably concluded that appellant committed the murder. On the evidence, the jury certainly could have found that Howard's identification of appellant was credible and could have disbelieved appellant's alibi witness. Accordingly, the evidence is sufficient to prove that appellant murdered the victim.

For the foregoing reasons, we affirm the convictions.

Affirmed.